**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Alan J. Butts | : | Case No. 2:26-cv-00051 |
| *Plaintiff,* | : | |
| | : | |
| v. | : | Judge Edmund A. Sargus |
| | : | |
| | : | Magistrate Judge Chelsey M. Vascura |
| | : | |
| City of Columbus, et al., | : | |
| *Defendants.* | : | |

**MOTION TO DISMISS OF DEFENDANTS
DR. PATRICK FARDAL AND COUNTY OF FRANKLIN**

Now come Defendants Patrick Fardal, M.D. ("Dr. Fardal") (named in the Complaint as "Patrik Fardal") and Franklin County (named in the Complaint as "County of Franklin") and respectfully submit their Motion to Dismiss the Complaint of Plaintiff Alan Butts ("Mr. Butts") pursuant to Federal Rule of Civil Procedure 12(b)(6). First, all claims against Dr. Fardal and Franklin County are barred by the doctrine of judicial estoppel. Second, any individual-capacity claims against Dr. Fardal are barred by qualified immunity. Third, all of Mr. Butts' constitutional claims against Dr. Fardal fail as a matter of law. Fourth, all state-law claims against Dr. Fardal fail as a matter of law; Dr. Fardal is shielded by statutory immunity under Ohio Revised Code Chapter 2744. Fifth, Franklin County is not *sui juris*, does not have statutory authority over Dr. Fardal, and is otherwise shielded by statutory immunity under Ohio Revised Code Chapter 2744. Finally, Mr. Butts' official-capacity constitutional claims are not properly alleged and fail as a matter of law. Therefore, Dr. Fardal and Franklin County respectfully move this Court to dismiss Mr. Butts'

1

claims against them in their entirety and with prejudice. The grounds for this Motion are further

detailed in the accompanying Memorandum in Support.

Respectfully submitted,

**SHAYLA D. FAVOR**
**PROSECUTING ATTORNEY**
**FRANKLIN COUNTY, OHIO**

/s Dexter W. Dorsey
Amy L. Hiers (0065028)
Dexter W. Dorsey (0097657)
Brian D. Zagrocki (0101970)
Assistant Prosecuting Attorneys
373 South High Street, 13th Floor
Columbus, Ohio 43215
(614) 525-2192 (P)/ (614) 525- 6012(F)
ahiers@franklincountyohio.gov
ddorsey@franklincountyohio.gov
bzagrocki@franklincountyohio.gov
*Counsel for Defendants Dr. Patrick Fardal*
*and Franklin County*

2

# TABLE OF CONTENTS

I.       **Procedural History**........................................................................................... 7

This action arises from the death of two-year-old J.U. in 2002, Mr. Butts' resulting criminal conviction based on shaken baby syndrome, and his later challenge to this conviction. Mr. Butts obtained relief from his criminal conviction by arguing that developments in the medical understanding of shaken baby syndrome occurred after his conviction and could not reasonably have been discovered earlier. The state court later entered a nolle prosequi order finding that the indictment was supported by probable cause and that the State and law enforcement acted in good faith.

II.      **Facts Alleged in the Complaint**....................................................................... 9

Mr. Butts alleges that law enforcement officers, Columbus Children's Hospital physicians, and former Franklin County Chief Pathologist Dr. Fardal conspired to frame him by advancing a false shaken baby syndrome diagnosis. As to Dr. Fardal specifically, Mr. Butts alleges that he performed J.U.'s autopsy, relied on false information, ignored pneumonia as an alternative explanation, and participated in a broader conspiracy. Mr. Butts further alleges that Franklin County is liable under respondeat superior for conduct associated with the Franklin County Medical Examiner's Office.

III.     **Cause of Action** ............................................................................................ 11

Mr. Butts asserts seven causes of action. Counts I through IV assert constitutional claims against the Individual Defendants for due process, deprivation of liberty without probable cause, failure to intervene, and conspiracy. Count V asserts a Monell claim against the City of Columbus. Count VI asserts intentional infliction of emotional distress against the Individual Defendants. Count VII asserts respondeat superior against the City of Columbus, Franklin County, and Columbus Children's Hospital.

IV.     **ARGUMENT**.................................................................................................. 12

     A.       **Standard of Review.**........................................................................... 12

Rule 12(b)(6) motion tests the legal sufficiency of a complaint. Although well-pleaded factual allegations are accepted as true, unsupported legal conclusions and conclusory allegations are not. A complaint must contain sufficient factual matter to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 548 (2007).

     B.       **Mr. Butts' Claims Against Dr. Fardal and Franklin County
             Are Barred by Judicial Estoppel.** ...................................................... 13

All claims against Dr. Fardal and Franklin County are barred because Mr. Butts' allegations contradict the position he successfully advanced in his criminal case. Mr. Butts

previously argued that the medical experts testified honestly and consistently with then-prevailing science, and that later developments in the medical understanding of shaken baby syndrome justified a new trial. He now alleges that Dr. Fardal knowingly fabricated evidence, relied on false information, and ignored known alternative explanations.

Judicial estoppel precludes such inconsistent positions where a party (1) asserts a position contrary to one asserted under oath in prior proceedings and (2) the prior court adopted that position. *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002). "A court should also consider whether the party has gained an unfair advantage from the court's adoption of its earlier inconsistent statement." *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008). Because the state court adopted Mr. Butts' prior position and he obtained the benefit of that position, he cannot now pursue an inconsistent theory for damages.

### C. All Claims Against Dr. Fardal in His Individual Capacity are Barred by Qualified Immunity. ........................................................................... 16

Qualified immunity bars Mr. Butts' individual-capacity claims against Dr. Fardal because Mr. Butts cannot establish that Dr. Fardal's conduct violated a clearly established constitutional right. To overcome qualified immunity, a plaintiff must identify precedent placing the alleged constitutional violation "beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Generalized allegations are insufficient; the inquiry must be particularized to the facts. *White v. Pauly*, 580 U.S. 73, 79 (2017). Mr. Butts' allegations challenge Dr. Fardal's medical judgment, his alleged reliance on information from others, and his alleged failure to adopt alternative medical theories. Those allegations do not establish a violation of clearly established law.

### D. No Clearly Established Precedent Shows that Dr. Fardal's Conduct Was Unconstitutional. ........................................................................... 17

Mr. Butts does not identify precedent placing the alleged constitutional violation beyond debate. To the contrary, the Sixth Circuit affirmed that competing medical opinions do not establish a constitutional violation, even when negligence is alleged. *Ferris v. City of Cadillac*, 726 F. App'x 473, 483 (6th Cir. 2018). At most, Mr. Butts alleges a disputed or allegedly incorrect medical opinion, which is insufficient to overcome qualified immunity.

### E. Dr. Fardal did not Violate Mr. Butts' Constitutional Rights (Counts I-IV). ............................................................................................. 23

Mr. Butts' constitutional claims independently fail because the Complaint does not plausibly allege that Dr. Fardal personally committed a constitutional violation.

#### 1. Mr. Butts Fails to State a Due Process Claim Against Dr. Fardal (Count I). ............................................................................. 23

Mr. Butts fails to state a procedural due process claim because he does not plead that available state remedies were inadequate. *See Struckman v. Vill. of Lockland*, Civil Action No.

4

1:17-cv-00543, 2018 U.S. Dist. LEXIS 110160, at *9 (S.D. Ohio July 2, 2018). He also fails to state a substantive due process claim because the allegations do not plausibly show that Dr. Fardal fabricated evidence, suppressed evidence, or engaged in conscience-shocking conduct. The Complaint alleges only disagreement with Dr. Fardal's medical opinion, which does not constitute a due process violation. *See Ferris,* 272 F. Supp. 3d at 1010-11.

**2.      Mr. Butts Fails to State a Deprivation of Liberty
Without Probable Cause Claim Against Dr. Fardal
(Count II). ........................................................................................ 25**

Mr. Butts does not plausibly allege that Dr. Fardal caused a deprivation of liberty without probable cause. A fabricated evidence claim can be defeated ". . . by showing that, notwithstanding the fabricated evidence, probable cause supported detention." *Clark v. Abdallah*, 131 F.4th 432, 447 (6th Cir. 2025). The Complaint identifies independent medical findings from other physicians before Dr. Fardal's autopsy, defeating any claim that Dr. Fardal's conclusions were necessary to establish probable cause. Further Mr. Butts fails to allege facts showing that Dr. Fardal knowingly fabricated evidence that was used to establish probable cause or otherwise caused a deprivation of liberty.

**3.      Mr. Butts Fails to State a Failure to Intervene Claim
Against Dr. Fardal (Count III). ....................................................... 27**

Mr. Butts' failure-to-intervene claim fails because that doctrine does not apply to the conduct of a forensic pathologist rendering a medical opinion. The Complaint does not allege what unconstitutional conduct Dr. Fardal observed, what he knew, when he knew it, or what he could have done to prevent it. General allegations that defendants "stood by" are insufficient. *See e.g.*, *Smith v. Cty. of Wayne,* No. 21-12070, 2023 U.S. Dist. LEXIS 225807, at *57 (E.D. Mich. Dec. 19, 2023); *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013).

**4.      Mr. Butts Fails to State a Conspiracy Claim Against Dr.
Fardal. ............................................................................................... 28**

Mr. Butts fails to plead a § 1983 conspiracy with the required particularity. The Complaint does not identify a specific agreement involving Dr. Fardal, facts showing that he shared a conspiratorial objective, or any overt act by him in furtherance of a conspiracy. Allegations that Dr. Fardal consulted with others or participated in the same investigation show, at most, parallel conduct. They do not plausibly allege an unlawful agreement. *See Ryan v. Michigan*, No. 22-13002, 2024 U.S. Dist. LEXIS 82516, at *5 (E.D. Mich. Feb. 28, 2024); *Twombly*, 550 U.S. at 556-57.

**F.      Dr. Fardal is Shielded by R.C. Chapter 2744 as to Mr. Butts'
State Law Claim (Count VI). ......................................................................... 29**

Dr. Fardal is immune from Mr. Butts' state-law claim because Mr. Butts alleges that he acted within the scope of his employment and does not plausibly allege malicious purpose, bad

5

faith, or wanton or reckless conduct sufficient to overcome statutory immunity. *See Chesher v. Neyer*, 477 F.3d 784, 796 (6th Cir. 2007).

**G.     Any Official Capacity Claims Against Dr. Fardal and Any Constitutional Claims Against Franklin County Fail as a Matter of Law.**..................................................................................... **30**

Any official capacity claim against Dr. Fardal fails because the Complaint appears to sue him only in his individual capacity and, in any event, an official capacity claim is treated as a claim against Franklin County, which also fails. Specifically, any constitutional claim against Franklin County fails because § 1983 does not allow respondeat superior liability, and Mr. Butts does not plausibly allege that a Franklin County policy or custom caused a constitutional violation. *See Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978); *Jorg v. Cincinnati*, 145 F. App'x 143, 147 (6th Cir. 2005).

**H.     Mr. Butts' State Law Claim of *Respondeat Superior* Fails Because Franklin County Is Not *Sui Juris* and Lacks Statutory Authority Over the Coroner's Office.**.................................................. **31**

Mr. Butts' respondeat superior claim independently fails because Franklin County is not sui juris. *Koch v. Cnty. of Franklin, Ohio*, No. 2:08-CV-1127, 2010 WL 2386352, at *9 (S.D. Ohio June 10, 2010). Further, Franklin County lacks statutory authority over the Coroner's Office sufficient to support Mr. Butts' respondeat superior theory. Because counties are creatures of statute and possess only the authority conferred by statute, Mr. Butts cannot impose liability on Franklin County for conduct outside its statutory control.

**I.     Franklin County is Entitled to Statutory Immunity Under Ohio Rev. Code Chapter 2744 as to Mr. Butts' *Respondeat Superior* Claim (Count VII).** ............................................................. **32**

Franklin County is a political subdivision entitled to immunity under R.C. Chapter 2744. Mr. Butts' respondeat superior claim arises from conduct associated with the Medical Examiner's Office, which constitutes a governmental function. Mr. Butts does not plead facts establishing any statutory exception to immunity. Accordingly, Franklin County is immune from liability as to Count VII. *See Wallin v. Cincinnati Eye Bank for Sight Restoration, Inc.*, 733 F. Supp. 1152, 1156 (S.D. Ohio 1990); *Winkle v. Zettler Funeral Homes, Inc.*, 182 Ohio App. 3d 195, 203, 912 N.E.2d 151 (Ohio Ct. App. 2009).

**V.     Conclusion** ............................................................................................................. **35**

---

**MEMORANDUM IN SUPPORT**

---

## I.       Procedural History

This action arises out of the tragic death of two-year-old J.U., which occurred on February 14, 2002. (ECF No. 1 at ¶¶ 6, 60). Mr. Butts, the boyfriend of J.U.'s mother, Beth Unger ("Ms. Unger"), was charged with J.U.'s death on February 21, 2002. (*Id.* at ¶ 76); *State v. Butts*, 2023-Ohio-2670, ¶ 2 (10th Dist.). On March 11, 2003, a jury found Mr. Butts guilty of felony murder, involuntary manslaughter, felonious assault, and two counts of endangering children. *State v. Butts*, 2006-Ohio-2538, ¶ 2 (10th Dist.). On May 16, 2003, Mr. Butts was sentenced to, "15 years to life imprisonment on Count 1, murder; six years for Count 3, felonious assault; six years for Count 4, endangering children; and four years for Count 5, endangering children, all to run concurrently. Count 2, involuntary manslaughter, was merged with Count 1." *State v. Butts*, 2004-Ohio-1136, ¶ 1 (10th Dist.).

Following his conviction, Mr. Butts appealed to the Tenth District Court of Appeals, asserting that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. *Id.* On March 11, 2004, the Tenth District overruled Mr. Butts' assignments of error and affirmed the trial court's judgment. *Id.* at ¶ 30. Specifically, the Tenth District found the state's evidence "competent" and "credible" and determined that "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (*Id.* at ¶ 29). Mr. Butts subsequently sought redress from the Ohio Supreme Court, but it declined jurisdiction on August 4, 2004. *State v. Butts*, 2006-Ohio-2538, ¶ 4 (10th Dist.).

On November 1, 2004, Mr. Butts filed a delayed application to reopen his appeal pursuant to Ohio Appellate Rule 26(B), averring that his counsel was ineffective due to the jury allegedly receiving improper jury instructions. *Id.* at ¶ 5. The Tenth District denied this application. *Id.* On March 17, 2005, Mr. Butts filed a "Motion for Resentencing Hearing and for Correction of an Erroneous Sentence" in the trial court. *Id.* at ¶ 6. The trial court construed the motion as a petition for post-conviction relief and denied it as both untimely and barred by *res judicata*, finding that Mr. Butts could have brought these claims on direct appeal. *Id.* The Tenth District affirmed the trial court's denial of Mr. Butts' post-conviction relief petition on May 23, 2006. *Id.* at ¶ 18.  Mr. Butts appealed the Tenth District's decision to the Ohio Supreme Court, but it denied his leave to appeal in October 2006. *State v. Butts*, 2006-Ohio-1214; *see also Butts v. Sheets*, 279 F. App'x 354, 356 (6th Cir. 2008).

In October 2005, Mr. Butts also filed a writ of habeas corpus in the Southern District of Ohio alleging that the merging of his conviction sentences violated his constitutional rights and ineffective assistance of appellate counsel. *Butts v. Sheets*, 279 F. App'x 354, 356 (6th Cir. 2008). In September 2006, the Southern District dismissed the petition in its entirety, concluding that his sentencing claim was unexhausted and rejecting his ineffective assistance claim on the merits. *Id*. Mr. Butts appealed to the Sixth Circuit, which affirmed the district court's decision on May 27, 2008. *Id.* at 358.

On April 5, 2019, Mr. Butts filed a motion for leave to file a delayed motion for a new trial asserting that new and developing discussions in the medical community surrounding Shaken Baby Syndrome ("SBS") constitutes new evidence that could not have been discovered at the time of his trial. *State v. Butts,* 2023-Ohio-2670, ¶ 7 (10th Dist.). Following a six-day evidentiary hearing, the trial court granted Mr. Butts' motions on November 10, 2022 and ordered a new trial.

8

*Id.* at ¶ 14. The State filed a notice of appeal and sought leave to appeal the trial court's decision. *Id.* at ¶ 15. On August 1, 2023, the Tenth District denied the State's motion for leave to appeal, finding that the State failed to demonstrate that the trial court abused its discretion because "significant debate" regarding the diagnosis of "shaken baby syndrome" has emerged in the medical community in the years following Mr. Butts' trial. *Id.* at ¶¶ 11, 80, 88-89, 102. As the Tenth District noted, "Mr. Butts presented evidence in his 2019 motions and at the 2021 hearing that could not have been discovered until many years after his 2003 convictions were entered." *Id.* at ¶ 78. Mr. Butts took the same position, arguing that "in the 16 years since his trial, there have been significant developments in the medical community concerning the diagnosis of SBS." *Id.* at ¶ 7. These developments, he contended, "constitute new evidence that could not have been, with reasonable diligence, discovered at the time of his trial or 120 days after the verdict was rendered." *Id.*

On February 12, 2024, the trial court, based on the State's motion for nolle prosequi, entered a *nunc pro tunc order*, to Nolle Prosequi the indictment. *Nolle Prosequi Entry, State v. Butts,* No. 02-CR-1092 (Franklin Cnty. Ct. Com. Pl. Feb. 12, 2024). The trial court found "that the indictment in this case was supported by probable cause based on evidence that existed at the time and that based on the evidence known at this time, the state and law enforcement engaged in no misconduct and prosecuted this case in good faith." *Id.* at p.1.

## II.     Facts Alleged in the Complaint

Mr. Butts avers that his arrest, conviction, and prison term were contrived from a coordinated conspiracy to "frame" Mr. Butts propagated by Columbus Police Officers John Weis ("Officer Weis"), Tim Keller ("Officer Keller"), Michael Holbrook ("Officer Holbrook"), Marilynn Seamans ("Officer Seamans"), Steven Eppert ("Officer Eppert"), and Wayne Goss

9

("Officer Goss"); Children's Hospital physicians Dr. Charles Johnson ("Dr. Johnson"), Dr. Jonathan Groner ("Dr. Groner"), and Dr. Karla Hauersperger ("Dr. Hauersperger"); and former Franklin County Chief Pathologist Dr. Patrick Fardal (collectively identified in the Complaint as the "Individual Defendants"). (ECF No. 1 at ¶¶ 98, 122). Franklin County, is said to have, "established, promulgated, and implemented the written and unwritten policies and practices of the Franklin County Medical Examiner's Office with regard to hiring, training, supervision, and discipline of its employees." (*Id.* at ¶ 22). Finally, Mr. Butts alleges that the City of Columbus ratified, created, or maintained policies that proximately resulted in a violation of Mr. Butts' constitutional rights. (*Id.* at ¶¶ 128-132).

Mr. Butts states that on February 13, 2002, J.U. collapsed and hit his head on the floor after suffering from a minor cold and experiencing a series of unexplained falls in the days prior. (*Id.* at ¶¶ 24, 32). After his collapse, Mr. Butts apparently attempted to rouse J.U. by "gently shaking him" and subsequently calling the police. (*Id.* at ¶ 26). Officer Keller and Officer Holbrook arrived on scene and discovered J.U. lying on the floor. (*Id.* at ¶ 27). Thereafter, J.U. was transported to Children's Hospital in a critical and comatose condition. (*Id.* at ¶¶ 35, 38). J.U. was evaluated by Dr. Ellen McManus ("Dr. McManus") who determined that J.U. had "bilateral subdural hemorrhaging indicative of 'shaken baby' syndrome." (*Id.* at ¶ 39). After a CAT scan, Dr. Hauersperger found that J.U. had "retinal hemorrhages, bleeding around the brain, and brain swelling," consistent with "non-accidental head injury, most consistent with shaken baby syndrome." (*Id.* at ¶ 53). Dr. Hauersperger prepared a "Report of Suspected Physical Abuse" wherein Dr. Hauersperger documented "bilateral subdural hemorrhages" and "percussion injury to liver, spleen, and bilateral kidneys." (*Id.* at ¶ 54).

Subsequently, Dr. Groner, pediatric surgeon and Director of the Trauma Program at Columbus Children's Hospital (now Nationwide Children's Hospital), determined that the principal diagnosis was "shaken baby syndrome" and that the secondary diagnosis was "subdural hemorrhage with loss of consciousness…retinal hemorrhages, anoxic brain damage, cerebral edema, cardiac arrest, abuse suspected by boyfriend." (*Id.* at ¶ 59).

After J.U. was removed from life support and pronounced dead on February14, 2002, Dr. Fardal conducted J.U.'s autopsy, and concluded J.U.'s death was caused by "a) bilateral subdural hemorrhages; b) optic nerve hemorrhage, left eye; c) diffuse cerebral edema; and d) retinal and optic nerve hemorrhage, right eye." (*Id.* at ¶¶ 60, 63). Dr. Fardal noted that "J.U. was allegedly shaken by another person." (*Id.*).

Mr. Butts contends that the information that Dr. Fardal received was false and that "Defendants suppressed all evidence of" a conversation that Dr. Fardal had with Officer Weis and Dr. Johnson. (*Id.* at ¶¶ 61, 63). Furthermore, Mr. Butts alleges that Dr. Fardal was aware of unspecified studies that called into question the validity of shaken baby syndrome and disregarded the probability that symptoms of pneumonia could imitate symptoms of shaken baby syndrome. (*Id.* at ¶ 65). Finally, Mr. Butts asserts that Franklin County is liable under the doctrine of *respondeat superior*. (*Id.* at ¶¶ 137-140).

### III.     Cause of Action

Plaintiff asserts seven claims in his Complaint: Count I alleges a Due Process violation under 42 U.S.C. § 1983 against the Individual Defendants. (Compl. at ¶¶ 98-105). Count II alleges Fourth and Fourteenth Amendment "Deprivation of Liberty Without Probable Cause" under 42 U.S.C. § 1983 against all Individual Defendants. (*Id.* at ¶¶ 106-115). Count III alleges a Failure to Intervene under 42 U.S.C. § 1983 against the Individual Defendants. (*Id.* at ¶¶ 116-120). Count IV

alleges a "Conspiracy to Deprive Constitutional Rights" under 42 U.S.C. § 1983 against the Individual Defendants. (*Id.* at ¶¶ 121-127). Count V asserts a *Monell* Claim under 42 U.S.C. § 1983 against the City of Columbus. (*Id.* at ¶¶ 128-132). Count VI asserts a State Law Claim for Intentional Infliction of Emotional Distress against the Individual Defendants. (*Id.* at ¶¶ 133-136). Count VII asserts a State Law Claim for *Respondeat Superior* against the City of Columbus, Franklin County, and Columbus Children's Hospital. (*Id.* at ¶¶ 137-140).

## IV.    ARGUMENT

### A.    Standard of Review.

A motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *Ferron v. Zoomego*, Inc., No. 2:06-cv-751, 2007 U.S. Dist. LEXIS 48292, at *4 (S.D. Ohio July 3, 2007); *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Ultimately, "[to] survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 569 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 663.

When considering a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept all non-conclusory and warranted factual allegations as true, and make all reasonable inferences in the plaintiff's favor. *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008). However, this presumption of truth does not extend to unsupported "legal conclusion[s] couched as factual allegations," as such conclusions are insufficient to withstand a motion to dismiss. *Id.*; *Twombly,* 550 U.S. at 555.

**B.**     **Mr. Butts' Claims Against Dr. Fardal and Franklin County Are Barred by Judicial Estoppel.**

As an initial matter, all claims against Dr. Fardal and Franklin County are barred by judicial estoppel. "The doctrine of judicial estoppel bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position 'either as a preliminary matter or as part of a final disposition.'" *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002) (quoting *Teledyne Indus., Inc. v. NLRB*, 911 F.2d 1214, 1218 (6th Cir. 1990)). "Although there is no set formula for assessing when judicial estoppel should apply, it is well-established that at a minimum, a party's later position must be clearly inconsistent with its earlier position." *Lorillard Tobacco Co. v. Chester, Willcox & Saxbe, LLP*, 546 F.3d 752, 757 (6th Cir. 2008) (citations and quotations omitted). "A court should also consider whether the party has gained an unfair advantage from the court's adoption of its earlier inconsistent statement." *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 751 (2001)).

In securing a new trial and ultimate release in his criminal case, Mr. Butts represented that the medical professionals involved, including Dr. Fardal, rendered their opinions honestly and in accordance with the then-prevailing medical standards governing SBS. *Butts*, 2023-Ohio-2670, at ¶¶ 7, 9, 26, 42, 44. Mr. Butts now advances the opposite theory, alleging that Dr. Fardal fabricated his findings, relied on false information, and participated in a conspiracy to secure Mr. Butts' conviction. (ECF No. 1 at ¶¶ 61-65, 99-102). Because Mr. Butts' current allegations are inconsistent with the position he successfully advanced in prior proceedings, judicial estoppel precludes him from asserting those claims here.

First, Mr. Butts' prior position was clear and unequivocal. As the Tenth District notes, in Mr. Butts' 2019 motion for new trial, Mr. Butts argued, "in the 16 years since his trial, there have

13

been significant developments in the medical community concerning the diagnosis of SBS. These developments, he contended, constitute new evidence that *could not have been, with reasonable diligence, discovered at the time of his trial or 120 days after the verdict was rendered.*" *Butts*, 2023-Ohio-2670, ¶7 (emphasis added). Additionally, in his April 5, 2019, Motion for Leave to File Delayed Motion for New Trial[1], Mr. Butts argued that

> the new evidence does not seek to impeach the State's witnesses, because they testified credibly based on valid credentials and the then-existing scientifically prevalent view, nor does it seek to show that those witnesses lied or misunderstood the state of science as it then existed. In other words, based on the mistaken literature of early 2003, the state's experts testified honestly but wrongly. Although that testimony was wrong, it was the then-generally accepted view.

Motion for Leave to File Delayed Motion for New Trial, *State v. Butts*, No. 02-CR-1092 (Franklin Cnty. Ct. Com. Pl. Apr. 5, 2019) at p. 17.

As Mr. Butts further highlights:

> Dr. Fardal was the third expert witness called by the State [and]. . . Dr. Fardal's testimony was consistent with both the 2001 NAME and AAP position papers limiting the cause of the constellation to SBS, a height fall, a high velocity vehicular accident, or having some object penetrate the head - a limited differential diagnosis.

*Id.* at pp. 22-23.

Mr. Butts is estopped from arguing that "Dr. Johnson, Dr. Groner, and Dr. Fardal all testified honestly, credibly, and consistently with the then-existing scientific standards adopted by both AAP and NAME, and in accordance with the then scientifically prevalent view," while simultaneously alleging in this civil action that Dr. Fardal knowingly "fabricate[d]" evidence or

---

[1] Dr. Fardal and Franklin County respectfully request that this Court take judicial notice of Mr. Butts' motion for new trial, filed April 5, 2019, entitled "Motion for Leave to File Delayed Motion for New Trial" in case number 02-CR-1092, in the Franklin County Court of Common Pleas pursuant to Fed. R. Evid. 201(b). Both case number 02-CR-1092 and the motion for new trial are publicly available and are not subject to reasonable dispute because they can be accurately and readily accessed from the Franklin County Court of Common Pleas website.

14

"ignored" known alternative diagnoses. *Id.* at 29; (ECF No. 1 at ¶¶ 61-65). These positions are mutually exclusive, and Mr. Butts' prior admissions defeat his current claims as a matter of law.

Second, the state court adopted Mr. Butts' prior position in granting a new trial. The Franklin County Court of Common Pleas concluded that the medical consensus regarding SBS had materially changed after Mr. Butts' conviction and that this shift constituted newly discovered evidence warranting a new trial. *Butts*, 2023-Ohio-2670, ¶¶ 88-89, 99. As the Tenth District emphasized:

> The real crux of the dispute in this case is whether the new expert medical testimony Mr. Butts offers establishes a strong probability that a different result would be reached in a new trial. Ultimately, the trial court concluded that it does. And we agree. What is now known about SBS hypotheses is worthy of considerable weight in the discretionary decision whether to grant a new trial in this case. Indeed, the debate between the defense and state experts reveals a fierce disagreement between forensic pathologists, who now question whether the symptoms J.U. displayed indicate intentional head trauma, and pediatricians, who largely adhere to the science as presented at Mr. Butts' trial.

*Id.* at ¶ 88.

Third, allowing Mr. Butts to proceed on his current allegations would confer an impermissible double advantage. Mr. Butts obtained a new trial and release from custody by asserting that the science changed after his conviction. *Id.* He now seeks damages based upon the allegation that Dr. Fardal was apparently "aware of the studies at the time that seriously called into question the validity of an SBS diagnosis altogether" by asserting that the science had already changed and was knowingly ignored. (ECF No. 1 at ¶ 65). Judicial estoppel exists to prevent precisely this type of conduct—parties "deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine,* 532 U.S. 742, 745 (2001). Mr. Butts must be held to his prior position.

15

Because Mr. Butts' constitutional and state-law claims against Franklin County and Dr. Fardal depend on the premise that Dr. Fardal fabricated evidence by ignoring then-existing medical science, and because judicial estoppel bars Mr. Butts from now advancing that premise, all claims against Dr. Fardal and Franklin County fail as a matter of law. *See Han v. Hankook Tire Co.*, 799 F. App'x 347, 350 (6th Cir. 2020) (affirming dismissal with prejudice where judicial estoppel negated the factual basis of the claims). Accordingly, the Complaint should be dismissed with prejudice as to Dr. Fardal and Franklin County on this basis alone.

**C.**     **All Claims Against Dr. Fardal in His Individual Capacity are Barred by Qualified Immunity.**

Qualified immunity protects public officials from civil damages in their individual capacities, provided their conduct does not violate a plaintiff's clearly established statutory or constitutional rights of which a reasonable person would have known. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is the plaintiff's burden to overcome qualified immunity once it is raised. *Crawford v. Tilley*, 15 F.4th 752, 760 (6th Cir. 2021). To overcome his burden, a plaintiff must point to precedent finding a constitutional violation in similar circumstances, at a low level of generality. *Cook v. Boss*, No. 24-3350, 2025 U.S. App. LEXIS 1966, at *26 (6th Cir. Jan. 27, 2025).

"A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5, (2021) (per curiam) (citing *Mullenix v. Luna,* 577 U.S. 7, 11 (2015) (per curiam)). "A right is not clearly established if existing precedent does not place the constitutional question beyond debate." *Zorn v. Linton,* 146 S. Ct. 926, 929 (2026) (citation and internal quotations omitted).

The Court may not define clearly established law "at a high level of generality." *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). The level of generality is too high if any reasonable official would not be able to interpret the alleged misconduct as a violation of plaintiff's rights. *Zorn*, 146 S. Ct. at 929; *Beck v. Hamblen County*, 969 F.3d 592, 599 (6th Cir. 2020). "It is not enough that the rule is suggested by then-existing precedent." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018). "The standard sets a high bar because it requires a plaintiff to identify with a high degree of specificity the legal rule that a government official allegedly violated." *Beck v. Hamblen Cty.*, 969 F.3d 592, 599 (6th Cir. 2020) (citation and internal quotation omitted). To that end, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018)).

### D.     No Clearly Established Precedent Shows that Dr. Fardal's Conduct Was Unconstitutional.

Mr. Butts sues Dr. Fardal in his individual capacity but cannot meet his burden of overcoming Dr. Fardal's qualified immunity. (*See* ECF No. 1, at ¶ 99, grouping Dr. Fardal with the "Individual Defendants" that are sued in their individual capacities.) No then-existing precedent clearly establishes "beyond debate" that every reasonable person would have understood Dr. Fardal's conduct to be unconstitutional at the time of the alleged wrongdoing. *Rivas-Villegas*, 595 U.S. at 5. Taken together, Mr. Butts decries that: (1) Dr. Fardal discussed the autopsy with Officer Weis and Dr. Johnson prior to J.U.'s examination; (2) "Defendants" (to include Dr. Fardal) suppressed evidence of this alleged conversation; (3) Dr. Fardal purportedly relied on "false information" to formulate his diagnosis; and (4) Dr. Fardal allegedly fabricated his diagnosis despite having knowledge that the validity of SBS had been called into question and that symptoms

17

of pneumonia can present as SBS. (ECF No. 1 at ¶¶ 60-65). Stripped of its conclusory allegations, the Complaint fails to state a violation of a clearly established right; furthermore, courts have shielded medical examiners with qualified immunity under similar circumstances.

First, it is important to emphasize that Mr. Butts blames Dr. Fardal's diagnoses on the purported false information that Dr. Fardal received rather than Dr. Fardal's own medical determinations. (ECF No. 1 at ¶ 63). Thus, even assuming Mr. Butts' version of events as true, Dr. Fardal cannot be said to have caused a constitutional violation when his medical opinion was purportedly based upon false information provided to him. (*Id.*). Further, according to Mr. Butts, Dr. Fardal only stated that J.U. was "*allegedly* shaken by another person" without any accusation that Mr. Butts caused the fatal injury. (*Id.*) (emphasis added). Moreover, Dr. Fardal noted that J.U. was suffering from pneumonia, which is consistent with Mr. Butts' defense that J.U's death was not intentional. (*Id.* at ¶¶ 9, 65).

Second, Mr. Butts has already conceded that his criminal defense theory was not prevalent at the time of his trial. The Tenth District, noting Mr. Butts' position in his motion for new trial echoed, "in the 16 years since his trial, there have been significant developments in the medical community concerning the diagnosis of SBS. These developments. . . constitute new evidence that *could not have been, with reasonable diligence, discovered at the time of his trial or 120 days after the verdict was rendered.*" *Butts*, 2023-Ohio-2670, at ¶ 6 (emphasis added). Thus, Mr. Butts' own assertions not only estop him from now taking a contrary position, they also preclude him from now arguing it was clearly established that Dr. Fardal's diagnosis led to a violation of his constitutional rights. That is, Mr. Butts cannot logically state that medical evidence was undiscoverable at the time of trial yet simultaneously claim that Dr. Fardal was aware of and deliberately ignored that very same evidence to fabricate a diagnosis of SBS. (ECF No. 1 at ¶ 65).

18

Third, even if Dr. Fardal had come to an alternate theory of J.U.'s death, merely having a difference of medical opinion does not constitute a clearly established constitutional violation.  In *Ferris v. City of Cadillac*, the plaintiff sued three medical examiners under 42 U.S.C. § 1983, alleging they fabricated evidence and caused his wrongful prosecution by erroneously concluding that a toddler's death was a homicide. *Ferris v. City of Cadillac*, 272 F. Supp. 3d 1003, 1007-1009 (W.D. Mich. 2017), *aff'd*, *Ferris v. City of Cadillac*, 726 F. App'x 473 (6th Cir. 2018). Prior to the autopsy, a detective with the local police department shared with the defendant forensic pathologist ". . . what he knew about the situation, the history. . .and who had been around [the decedent] prior to her death." *Ferris*, 726 F. App'x at 475.  Further, the defendant County Medical Examiner reviewed the autopsy report and records from law enforcement agencies before determining that the cause of death was a homicide. *Id.* at 476.

The plaintiff's expert, also a forensic pathologist, contested the findings of the state's forensic pathologist finding that the toddler died of "bronchopneumonia complicating her head trauma" and found "no evidence of an intentional infliction of head trauma in the materials he reviewed." *Id.* at 477. A second pathologist also found that the manner of the toddler's death could not be determined. *Id.* at 479. In light of "competing medical opinions", the county prosecutor dismissed the charges with prejudice. *Id.* at 477.

The plaintiff argued that the medical examiners violated his constitutional rights because the examiners reached a medical conclusion that competing experts strongly disputed as "far afield of what any reasonable forensic pathologist would conclude." *Id.* at 477, 479, 480.  Rejecting this argument, the district court stated:

> It is well established that a person's constitutional rights are violated when evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury. *Gregory v. City of Louisville*, 444 F.3d

19

725, 737 (6th Cir. 2006) (quotation marks omitted). But what about a case where qualified experts honestly draw different conclusions from medical data that all accept as accurate? The Court is aware of no law — clearly established or otherwise — that would expose experts to constitutional liability for that. To the contrary, qualified immunity is designed precisely for such situations to ensure that professionals are willing to engage in the difficult, yet critically important, task of investigating the unexplained death of children while in the custody of their parents or other caretakers.

*Ferris*, 272 F. Supp. 3d 1003, 1010 (W.D. Mich. 2017).

The district court further emphasized that as long as medical professionals "generate and use accurate medical records, and articulate the opinions of what the evidence means honestly and in good faith, qualified immunity should protect them even if their opinions turn out to be wrong." *Id* at 1110. The Sixth Circuit agreed. It rejected the plaintiff's argument that "Defendants' unequivocal opinions/conclusions that [decedent's] injuries were intentionally inflicted were far afield of what reasonable medical examiners/forensic pathologists could conclude." *Ferris*, 726 F. App'x at 480. Affirming the district court's grant of summary judgment to defendants, the Sixth Circuited quoted *Caminata v. Cty. of Wexford*, 664 F. App'x 496, 501 (6th Cir. 2016), echoing that "[a]lthough [Plaintiff's expert evidence] impugns the quality of [Defendants'] investigation, it is insufficient to establish knowing fabrication or deliberate or reckless falsehoods, rather than mere negligence." *Ferris*, 726 F. App'x at 481.

Like *Ferris v. City of Cadillac*, Mr. Butts attempts to impose liability by way of Dr. Fardal's good-faith medical diagnosis which conflicts with Mr. Butts' defense in his criminal case. *Id.* However, Dr. Fardal allegedly being "aware that acute pneumonia could cause the same symptoms as those of SBS" and being "aware of studies at the time that seriously called into question the validity of SBS diagnosis altogether" is not sufficient to strip Dr. Fardal of qualified immunity. (ECF No. 1 at ¶ 65); *Ferris*, 726 F. App'x at 484. Nor is it the case that referencing police reports

20

or talking to a detective prior to the autopsy constitutes a clearly established constitutional violation. *Id.* at 475-476.

What remains of Mr. Butts' allegations against Dr. Fardal are strictly conclusory. Without basis in fact or record, Mr. Butts alleges that "Defendants" suppressed all evidence of a conversation that Dr. Fardal presumably had with Officer Weis and Dr. Johnson prior to Dr. Fardal undertaking the examination of J.U. (*Id.* at ¶ 61). This conversation, Mr. Butts contends, "would have provided a basis for Plaintiff to build a defense through the support of expert witnesses" were it disclosed. *Id.* Furthermore, Mr. Butts contends generally that all Defendants fabricated and suppressed evidence "to secure his wrongful arrest, prosecution and conviction." *Id.* at ¶¶ 10-11. However, Mr. Butts is required to make more than "conclusory allegations bereft of supporting details." *Norman v. City of Cincinnati*, No. 25-3222, 2025 LEXIS 406233, at *12 (6th Cir. Oct. 17, 2025) (citing *Reynolds v. Szczesniak*, No. 21-2732, 2022 U.S. App. LEXIS 23215, at *23 (6th Cir. Aug. 18, 2022)); *see also Marchek v. United Servs. Auto. Ass'n*, 118 F.4th 830, 833 (6th Cir. 2024) ("To survive a motion to dismiss, a complaint may not rely on conclusory legal allegations."). Simply put, Mr. Butts' conclusory allegations "receiv[e] no presumption of truth." *Caraway v. CoreCivic of Tenn., LLC*, 98 F.4th 679, 686 (6th Cir. 2024); (ECF No. 1 at ¶¶ 61-65).

Here, the record indicates that Dr. Fardal testified at trial and was subject to cross-examination. *State v. Butts*, 2023-Ohio-2670, ¶¶ 3, 34 (10th Dist.). Mr. Butts does not aver that Dr. Fardal lied during his testimony or misrepresented his conversations. Neither does Mr. Butts articulate how "Defendants" suppressed the conversation between Drs. Fardal and Johnson, and Officer Weis, or explain how Dr. Fardal gained knowledge of this allegedly suppressed conversation, or what Dr. Fardal specifically did to suppress evidence. (ECF No. 1 at ¶ 61). Indeed, Plaintiff could have asked Dr. Fardal if he conferred with anyone prior to conducting his analysis

while Dr. Fardal was testifying. Rather, it would seem that Mr. Butts either intends to hold Dr. Fardal liable for his trial counsel's failure to cross-examine Dr. Fardal on this topic, or is basing his characterizations of suppression and fabrication solely on his own disagreement with Dr. Fardal's medical opinion. Either method is insufficient to strip Dr. Fardal of his qualified immunity.

Additionally, Mr. Butts' allegations against Dr. Fardal are further diluted and confused by his use of group pleading. "A complaint which lumps all defendants together and does not sufficiently allege who did what to whom, fails to state a claim for relief because it does not provide fair notice of the grounds for the claims made against a particular defendant." *Courser v. Michigan House of Representatives*, 404 F. Supp. 3d 1125 (W.D. Mich. 2019) (quoting *Tatone v. SunTrust Mortg.*, Inc., 857 F. Supp. 2d 821, 831 (D. Minn. 2012)). Here, Mr. Butts' assertion that "Defendants suppressed all evidence of the conversation" is not only vague, it also fails to state what Dr. Fardal, in particular, did to suppress the alleged conversations. (ECF No. 1 at ¶ 61). Moreover, Mr. Butts asserts that, "[w]ithout evidence, Defendants immediately concluded J.U. had been violently shaken." (*Id.* at PAGEID # 8). Yet, this contradicts Plaintiff's assertion that Dr. Fardal conducted an autopsy, consulted police records and doctors, and formed his analysis based on "false information." (*Id.* at ¶¶ 60-63). It cannot be the case that Dr. Fardal both formed his opinion without *any* evidence while also relying on evidence that was faulty to form his opinion. Thus, as it relates to Dr. Fardal, Mr. Butts' allegations of constitutional misconduct have no clearly established precedential support, are logically untenable, contradictory, conclusory, and ultimately, insufficient to overcome Dr. Fardal's qualified immunity.

**E.     Dr. Fardal did not Violate Mr. Butts' Constitutional Rights (Counts I-IV).**

In addition to failing to articulate a violation of a clearly established right, Mr. Butts also fails to state a plausible constitutional claim against Dr. Fardal. Mr. Butts alleges that Dr. Fardal's conduct constitutes a Due Process violation (Count I), a "Deprivation of Liberty Without Probable Cause" (Count II), a failure to intervene (Count III), and a "Conspiracy to Deprive Constitutional Rights" (Count IV), each brought pursuant to 42 U.S.C. § 1983. (Compl. at ¶¶ 97-127). Dr. Fardal's conduct does not amount to a violation of any of these constitutional rights. (*Id.*).

**1.     Mr. Butts Fails to State a Due Process Claim Against Dr. Fardal (Count I).**

Mr. Butts alleges that the Individual Defendants, including Dr. Fardal, deprived him of his constitutional right to a fair trial by conducting a "reckless investigation" and by withholding exculpatory and impeachment evidence, destroying evidence, and fabricating false reports, statements, and testimony. (ECF No. 1 at ¶¶ 98-99). This claim fails as a matter of law. The Fourteenth Amendment provides, in relevant part, that no State shall "deprive any person of life, liberty or property, without due process of law." U.S. Const. amend. XIV, § 1. The Due Process Clause of the Fourteenth Amendment has both procedural and substantive components. *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012).

Mr. Butts fails to plausibly allege any deprivation of procedural due process. To state a procedural due process claim under § 1983, a plaintiff must first "plead . . . that state remedies for redressing the wrong are inadequate." *Struckman v. Vill. of Lockland*, Civil Action No. 1:17-cv-00543, 2018 U.S. Dist. LEXIS 110160, at *9 (S.D. Ohio July 2, 2018) (citing *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983)). Mr. Butts makes no such allegation here. To the contrary, Mr. Butts received a full criminal trial, was represented by counsel, and exercised his right to cross-

examine witnesses, including Dr. Fardal. *State v. Butts*, No. 02-CR-1092 (Franklin Cnty. C.P. Feb. 12, 2002); *Butts,* 2004-Ohio-1136, at ¶ 29. As the Tenth District determined, ". . . any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. There is sufficient competent, credible evidence which could convince a reasonable trier of fact of appellant's guilt beyond a reasonable doubt." *Butts,* 2004-Ohio-1136, at ¶ 29. Mr. Butts then pursued multiple avenues of appellate and post-conviction relief. *See supra* at Section I. These procedures satisfy the requirements of due process as a matter of law.

To state a substantive due process claim, plaintiff must "establish either (1) the deprivation of a particular constitutional guarantee, or (2) government action that shocks the conscience." *Struckman,* 2018 U.S. Dist. LEXIS 110160, at *10 (internal quotations omitted). Claims that a plaintiff was "arrested in relation to false and fabricated reports by the [co-]defendants" are "too vague and conclusory to support a claim that defendants fabricated or falsified information that was used to prosecute plaintiff." *Id.* at *11.

Moreover, to the extent Mr. Butts' claims arise from Dr. Fardal's testimony, it is barred by absolute immunity. "All witnesses are immune from civil liability based on testimony given in judicial proceedings." *CTI Contractor Servs., LLC v. Mich. HHS*, No. 25-10785, 2026 U.S. Dist. LEXIS 67703, at *23 (E.D. Mich. Mar. 30, 2026). This immunity applies even where a plaintiff alleges that the testimony was false. *Id.* Accordingly, any claim predicated on Dr. Fardal's trial testimony fails as a matter of law.

Still, a "due-process right is infringed when the prosecution presents evidence [that] is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Id.* at *30 (internal quotations omitted). However, Mr. Butts does not plausibly allege (in non-conclusory fashion) that Dr. Fardal fabricated any evidence. Nor does

24

Mr. Butts plausibly allege that the "fabricate[d]" evidence that Dr. Fardal purportedly provided would have affected the outcome of his trial. (ECF No. 1 at ¶ 65). This is especially true when " [a]t that time, it was believed and generally accepted by the medical community—including both NAME and the AAP—that in the absence of a fall from more than ten feet, a high-velocity crash, or an object penetrating the head, an intentional shaking (SBS) was the only other cause of that triad of injuries." *Butts,* 2023-Ohio-2670, at ¶ 89.

Mr. Butts further alleges that Dr. Fardal was aware of alternative explanations, such as pneumonia or competing medical studies, but nonetheless reached a falsified conclusion. (ECF No. 1 at ¶ 65). These allegations, even if accepted as true, merely amount to a disagreement with Dr. Fardal's medical judgment and the information on which he relied—not a plausible claim that he knowingly fabricated evidence. Courts reject attempts to constitutionalize such disputes between experts. *See generally Ferris*, 726 F. App'x. At bottom, Mr. Butts alleges only that Dr. Fardal reached a medical conclusion with which he disagrees. That is insufficient to state a due process violation. Accordingly, Count I fails as a matter of law.

> **2.** **Mr. Butts Fails to State a Deprivation of Liberty Without Probable Cause Claim Against Dr. Fardal (Count II).**

Mr. Butts' second cause of action fails because he does not plausibly allege that Dr. Fardal caused a deprivation of his liberty without probable cause. Mr. Butts contends that his "unlawful prosecution and incarceration" were caused by Individual Defendants falsifying and withholding exculpatory evidence. (ECF No. 1 at ¶¶ 108-109). To the extent this claim is based on arrest or detention without probable cause, it arises under a malicious prosecution, Fourth Amendment claim—not the Fourteenth Amendment. *See Clark v. Abdallah*, 131 F.4th 432, 447 (6th Cir. 2025) ("When individuals present claims that they were unlawfully detained based on fabricated

evidence, we tend to consider them under the rubric of malicious prosecution. . . Fourth Amendment claims turn crucially on the lack of probable cause.") "The Fourth Amendment is violated when probable cause rests on fabricated evidence presented to a grand jury or to a judge determining probable cause." *Id.* A fabricated evidence claim can be defeated ". . . by showing that, notwithstanding the fabricated evidence, probable cause supported detention." *Id.*

Here, Mr. Butts' own allegations confirm that probable cause existed independent of Dr. Fardal's autopsy. According to Mr. Butts, multiple treating physicians, including Drs. McManus, Hauersperger, Johnson, and Groner, identified non-accidental injuries consistent with abuse before Dr. Fardal made his findings. (ECF No. 1 at ¶¶ 39, 53, 57, 59). The existence of this independent medical evidence defeats any claim that Dr. Fardal was the source of probable cause or that his conclusions were necessary to initiate or sustain Mr. Butts' detention. Furthermore, by Mr. Butts' own account, Officer Weis and Dr. Johnson already believed the "theory that J.U. died from shaken baby syndrome." (*Id.* at ¶ 61). Additionally, Mr. Butts fails to show (in non-conclusory fashion) how Dr. Fardal's medical opinion constitutes fabricated evidence that made his arrest or conviction unsupported by probable cause, or how Dr. Fardal's opinion misled the grand jury or officers in their determination that probable cause existed.  Moreover, to the extent Mr. Butts instead relies on the alleged use of false evidence to obtain a conviction, that theory is duplicative of his first cause of action under the Fourteenth Amendment and fails to state a claim for the reasons stated *supra*. Because Mr. Butts fails to allege facts showing that Dr. Fardal knowingly fabricated evidence that was used to establish probable cause or otherwise caused a deprivation of liberty, Count II must be dismissed.

### 3. Mr. Butts Fails to State a Failure to Intervene Claim Against Dr. Fardal (Count III).

Mr. Butts' failure-to-intervene claim fails at the outset because that doctrine does not apply to the circumstances alleged against Dr. Fardal. As a threshold matter, a failure-to-intervene claim cannot exist in the absence of an underlying constitutional violation. *See Johnson v. Cty. of Kalamazoo,* No. 1:23-cv-138, 2023 U.S. Dist. LEXIS 80714, at \*10 (W.D. Mich. Apr. 21, 2023); *Litton v. Cookie Crews*, No. 3:23-CV-00378-JHM, 2025 U.S. Dist. LEXIS 60420, at \*14 (W.D. Ky. Mar. 31, 2025). Because Mr. Butts fails to plausibly allege an underlying constitutional violation, Count III necessarily fails.

Beyond that threshold defect, the failure-to-intervene doctrine is confined to a narrow set of circumstances that commonly involve law enforcement officers who are physically present during an ongoing constitutional violation, such as the use of excessive force, and who have a realistic opportunity to stop it. *See, e.g.*, *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013). Courts have failed to extend failure to intervene claims to situations wherein the defendants "do not have 'a realistic opportunity to intervene and prevent harm,'" including instances where defendants are not in a position to prevent the alleged fabrication of evidence. *Smith v. Cty. of Wayne*, No. 21-12070, 2023 LX 51293, at \*57-59 (E.D. Mich. Dec. 19, 2023) (quoting *Wells v. City of Dearborn Heights*, 538 F. App'x 631, 640 (6th Cir. 2013) (quoting *Ontha v. Rutherford County*, 222 F. App'x 498, 507 (6th Cir. 2007))).

Mr. Butts' allegations fall far outside that limited context. The Complaint does not allege that Dr. Fardal was a law enforcement officer (he's not) or had authority to intervene in investigative or prosecutorial decisions (he didn't). Instead, the allegations concerning Dr. Fardal are limited to his role as a forensic pathologist—reviewing materials, consulting with others, and

27

rendering a medical opinion after J.U.'s death. Nor does the Complaint identify any specific act that Dr. Fardal allegedly observed and failed to prevent. It asserts only, in conclusory fashion, that one or more of the Individual Defendants "stood by without intervening," without alleging what Dr. Fardal allegedly knew, when he knew it, or what he could have done to stop it. Such generalized allegations are insufficient to state a claim. (ECF No. 1 at ¶ 117).

"For there to be a failure to intervene, there must be a corresponding duty," and there is no duty to "prevent the withholding of exculpatory evidence in violation of *Brady.*" *Elkins v. Summit Cty.*, No. 5:06-CV-3004, 2009 U.S. Dist. LEXIS 36077, at \*30 (N.D. Ohio Apr. 28, 2009). Mr. Butts, without any support, attempts to extend a doctrine designed for on-the-scene law enforcement misconduct to a forensic pathologist who rendered a medical opinion outside the presence of any alleged constitutional violation. The law does not support such an expansion. *Id.*

### 4. Mr. Butts Fails to State a Conspiracy Claim Against Dr. Fardal.

To state a § 1983 conspiracy claim, a plaintiff must allege (not merely conclude) specific facts showing (1) a single plan, (2) that the alleged conspirators shared in the general conspiratorial objective, and (3) that an overt act was committed in furtherance of the conspiracy causing injury. *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985); *Cassaday v. Michigan*, No. 1:25-cv-12576, 2025 U.S. Dist. LEXIS 272017, at \*16 (E.D. Mich. Nov. 5, 2025). "Without more, parallel conduct does not suggest conspiracy," and conclusory allegations of an agreement are insufficient. *Twombly*, 550 U.S. at 548. "A conspiracy claim must be pleaded with particularity, and vague and conclusory allegations unsupported by material facts are insufficient." *Ryan v. Michigan*, No. 22-13002, 2024 U.S. Dist. LEXIS 82516, at \*5 (E.D. Mich. Feb. 28, 2024); *Twombly*, 550 U.S. at 565. Mr. Butts' conspiracy allegations fall far short of this standard.

28

The Complaint alleges, in broad terms, that the "Individual Defendants" "act[ed] individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial." (ECF No. 1 at ¶ 98). However, Mr. Butts does not identify any specific agreement involving Dr. Fardal, any communication in which he joined such an agreement, or any facts showing that he shared a conspiratorial objective with the other Individual Defendants. The only specific factual allegations concerning Dr. Fardal are that he consulted with Dr. Johnson and Detective Weis before conducting the autopsy and reviewed reports in forming his conclusions. (*Id.* at ¶ 61). These allegations describe, at most, parallel participation in the same investigation—not a conspiratorial agreement. Further, Mr. Butts' own factual allegations undermine the existence of any conspiracy. As Mr. Butts alleges, Dr. Fardal's autopsy report ". . . refut[es] Defendant Hauersberger's [sic] findings." (*Id.* at ¶ 64). These inconsistencies are incompatible with the existence of a coordinated plan to fabricate evidence and refute the allegation that the alleged co-conspirators shared a conspiratorial objective.

### F. Dr. Fardal is Shielded by R.C. Chapter 2744 as to Mr. Butts' State Law Claim (Count VI).

Mr. Butts' state-law claim for intentional infliction of emotional distress against Dr. Fardal is barred by statutory immunity under Ohio Rev. Code Chapter 2744. As an employee of a political subdivision, Dr. Fardal is immune from liability unless Mr. Butts can establish that one of the exceptions in R.C. 2744.03(A)(6) applies—namely, that Dr. Fardal acted (1) manifestly outside the scope of his employment, (2) with malicious purpose, in bad faith, or in a wanton or reckless manner, or (3) pursuant to a statute imposing liability. *Chesher v. Neyer*, 477 F.3d 784, 796 (6th Cir. 2007); *Colley v. Crabtree*, 2024-Ohio-437, ¶ 101, 235 N.E.3d 562, 581 (Ct. App.).

29

Mr. Butts' own allegations foreclose the first exception, as he expressly alleges that Dr. Fardal was acting within the scope of his employment. (ECF No. 1 at ¶ 20). Mr. Butts likewise fails to allege malicious purpose, bad faith, or wanton or reckless conduct. To the extent Mr. Butts intends to imply these exceptions implicitly, he does so only in conclusory fashion. Finally, Mr. Butts identifies no statute that expressly imposes liability on Dr. Fardal. Accordingly, Dr. Fardal is entitled to statutory immunity under R.C. 2744.03(A)(6) and Count VI must be dismissed.

**G.      Any Official Capacity Claims Against Dr. Fardal and Any Constitutional Claims Against Franklin County Fail as a Matter of Law.**

To the extent Mr. Butts attempts to allege official capacity claims against Dr. Fardal pursuant to 42 U.S.C. § 1983, those claims fail as a matter of law. First, it does not appear that Mr. Butts actually asserts a claim against Dr. Fardal in his official capacity, as the Complaint expressly includes Dr. Fardal with the "Individual Defendants." (ECF No. 1 at ¶ 98). Second, even if Mr. Butts did properly allege an official capacity claim against Dr. Fardal, such a claim is treated as a suit against the governmental entity to which Dr. Fardal belongs.  "A claim against a government official in their official capacity is duplicative of a claim against the governmental entity." *Mazur v. Garrison*, 2025 U.S. Dist. LEXIS 227741, *14. If the intended entity is the Franklin County Coroner's Office, the Complaint fails because a county coroner's office is merely an arm of the county; it is not *sui juris* and cannot be sued in its own right. S*ee Walker v. Columbus Div. of Police*, No. 2:25-cv-162, 2025 LX 293772, at *6 (S.D. Ohio July 24, 2025), aff'd in part, vacated in part, remanded on other grounds, No. 25-3625, 2026 LX 66826, at *7 (6th Cir. Feb. 24, 2026) (affirming the dismissal of federal constitutional claims with prejudice and remanding state-law claims for dismissal without prejudice).

If Mr. Butts intends to allege a constitutional claim against Franklin County for the actions performed by Dr. Fardal, such a claim would fail because "a municipality may not be held liable for a § 1983 violation under a theory of *respondeat superior*." *Hainey v. Parrott*, 2005 U.S. Dist. LEXIS 44837, *30. A political subdivision may be held liable under 42 U.S.C. § 1983 only where the alleged constitutional violation results from an official policy or custom of the entity. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). However, the Sixth Circuit has rejected the argument that a coroner determining a cause of death is a policymaker for the county. *See Jorg v. Cincinnati*, 145 F. App'x 143, 147 (6th Cir. 2005). This is the case even if a coroner is alleged to have falsifies a report. *Id.* As the Sixth Circuit has noted, state law mandates that the coroner determine the cause of death *Id.*; Ohio Rev. Code § 313.09. Further, the Complaint does not plausibly allege that any policy or custom of Franklin County caused an alleged constitutional violation. Accordingly, any constitutional claim against Franklin County fails, and any official capacity claim against Dr. Fardal is duplicative and thereby fails for the same reasons.

**H.      Mr. Butts' State Law Claim of *Respondeat Superior* Fails Because Franklin County Is Not *Sui Juris* and Lacks Statutory Authority Over the Coroner's Office.**

Mr. Butts' state law claim against Franklin County (Count VII) fails because Franklin County is not *sui juris* and lacks statutory authority over the Coroner's Office. Franklin County is not an entity capable of being sued unless specially authorized by statute. *Winston v. County of Franklin*, 2011 U.S. Dist. LEXIS 70078, at *11. "The Ohio Revised Code establishes the capacity of a county to sue or be sued." *Id.* Ohio law provides that only a county that adopts a "charter or an alternative form of government" is "capable of being sued." *Koch v. Cnty. of Franklin, Ohio*, No. 2:08-CV-1127, 2010 WL 2386352, at *9 (S.D. Ohio June 10, 2010); R.C. 301.22. Because

"Franklin County has not adopted a charter or an alternative form of government," it is not *sui juris* and lacks the capacity to sue or be sued. *Id.*

Second, even if, *arguendo*, Franklin County were *sui juris* as to Mr. Butts' *respondeat superior* claim (it is not) such allegations are inaccurate as a matter of law. Franklin County cannot be vicariously liable for Dr. Fardal's conduct because it does not operate the coroner's office and could not employ Dr. Fardal. In Ohio, the Coroner is an individually elected official. R.C. § 313.01. It is the Coroner that appoints pathologists who perform autopsies. R.C. § 313.05(A)(1). Thus, Mr. Butts' allegation that Defendant Franklin County "implemented the written and unwritten policies and practices of the Franklin County Medical Examiner's Office with regard to hiring, training, supervision, and discipline of its employees, including but not limited to Dr. Fardal," is inaccurate as a matter of law because Franklin County does not have such statutory authority. *Id.*; (ECF No. 1 at ¶ 22). Thus, on these grounds alone, Mr. Butts fails to state a claim under the theory of *Respondeat Superior* against Franklin County.

**I.**      **Franklin County is Entitled to Statutory Immunity Under Ohio Rev. Code Chapter 2744 as to Mr. Butts' *Respondeat Superior* Claim (Count VII).**

Even if, *arguendo*, Franklin County is capable of being sued under a state law claim of *Respondeat Superior* (it is not), and even if Franklin County had statutory authority over the Coroner's office (it does not), Mr. Butts still has not alleged facts sufficient to strip Franklin County of its statutory immunity under R.C. Chapter 2744. "Political subdivisions of Ohio are generally immune from liability for tort claims connected with a governmental or proprietary function." *Doe v. Reynoldsburg City Sch. Dist. Bd. of Educ.*, 2026 U.S. Dist. LEXIS 67555, at *33. "Under Ohio law, the common-law concept of sovereign immunity is codified in Chapter 2744." *Id.* "Ohio courts apply a three-tier analysis to determine whether a political subdivision is immune

from liability for tort claims." *Nemeth v. Vill. of Tiltonsville*, No. 2:21-cv-01460, 2023 U.S. Dist. LEXIS 54680, at *13-14 (S.D. Ohio Mar. 29, 2023).

At the first step of the analysis, courts determine whether the general grant of immunity applies to an entity by assessing whether the entity is a political subdivision and whether it was performing a governmental function or a proprietary function. *Id.* A "political subdivision" includes "a municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." Ohio Rev. Code § 2744.01(F). "Franklin County is a political subdivision under Ohio law." *Cundiff v. Franklin Cty. Bd. of Comm'rs*, No. 2:24-cv-289, 2025 LEXIS 258886, at *33 (S.D. Ohio Mar. 19, 2025).

All functions of a political subdivision are classified as either governmental or proprietary. Ohio Rev. Code § 2744.02(A)(1). A "governmental function" is one that: (1) is imposed upon the state as an obligation of sovereignty and is performed voluntarily or pursuant to legislative requirement; (2) is for the common good of all citizens of the state; or (3) promotes or preserves the public peace, health, safety, or welfare, involves activities not engaged in or customarily engaged in by nongovernmental persons, and is not otherwise designated as proprietary. Ohio Rev. Code § 2744.01(C)(1)(a)–(c). In contrast, a "proprietary function" is one that is not classified as governmental and involves activities that promote or preserve the public peace, health, safety, or welfare but are customarily engaged in by nongovernmental persons. Ohio Rev. Code § 2744.01(G)(1)(a)–(b).

The second step of the analysis "considers whether the exceptions in Ohio Revised Code § 2744.02(B) abrogate immunity." *Doe v. Reynoldsburg City Sch. Dist. Bd. of Educ.*, 2026 U.S. Dist. LEXIS 67555, *33. "Those exceptions relate to losses caused by operation of a motor vehicle,

33

acts taken 'with respect to proprietary functions,' claims involving public roads and physical defects of buildings, and express civil liability imposed elsewhere under the Ohio Revised Code." *Cundiff,* 2025 LEXIS 258886, at *34 (citing Ohio Rev. Code § 2744.02(B)). "Only if an exception applies does the court proceed to step three to assess whether one of the defenses listed in Ohio Revised Code 2744.03 applies and reinstates immunity." *Doe v. Reynoldsburg City Sch. Dist. Bd. of Educ.*, No. 2:25-cv-138, 2026 LX 145144, at *33 (S.D. Ohio Mar. 30, 2026).

Two cases applying this framework to coroner-related conduct are particularly instructive and confirm that the allegations here fall squarely within governmental functions entitled to immunity. In *Wallin v. Cincinnati Eye Bank for Sight Restoration, Inc.*, this Court dismissed claims against a county coroner arising from the coroner's alleged mishandling of autopsy-related testing and dissemination of erroneous medical information. 733 F. Supp. 1152, 1155–56 (S.D. Ohio 1990). This Court held that the coroner's performance of an autopsy "was clearly a governmental function," and any actions performed in connection with that function—such as authorizing procedures and communicating results—were likewise governmental functions, not proprietary ones. *Id.* at 1156. This Court further explained that the fact that some aspects of the conduct involved interaction with private actors did not alter the governmental nature of the coroner's functions. *Id.* Because the conduct at issue was governmental and no exception applied, the county was immune and dismissal was appropriate. *Id.*

An Ohio appellate court applying Ohio's immunity law likewise held that a coroner's functions are governmental in nature. In *Winkle v. Zettler Funeral Homes, Inc.*, the court held, in relevant part, that a county coroner's office was entitled to immunity under Ohio Rev. Code § 2744.02(A)(1) in a case involving the mistaken release and burial of the wrong body. 182 Ohio App. 3d 195, 203, 912 N.E.2d 151 (Ohio Ct. App. 2009). The court emphasized that the plaintiffs

34

did not demonstrate that the coroner's office was anything other than a political subdivision engaged in governmental functions or that any exception under § 2744.02(B) applied. *Id.*

Applying this framework here, Franklin County is immune from Plaintiff's *respondeat superior* claim arising under Ohio law. At the first step, Franklin County is a political subdivision. *Cundiff,* 2025 LEXIS 258886, at \*33; R.C. § 2744.01.

At the second step, Plaintiff does not allege any facts bringing his claim within one of the five statutory exceptions in Ohio Rev. Code § 2744.02(B). The Complaint does not involve the operation of a motor vehicle, a proprietary function, public roads, or a physical defect of a building. Nor does Plaintiff identify any statute expressly imposing liability on the County. Indeed, *respondeat superior* is not an exception to immunity under R.C. Chapter 2744. *Elton v. Sparkes*, 2015 Ohio Misc. LEXIS 6, at \*4. As in *Winkle*, where the court emphasized the absence of any applicable exception in affirming immunity, Plaintiff's failure to demonstrate a statutory exception is fatal to his claim. *Winkle*, 182 Ohio App. 3d at 203. And as *Wallin* demonstrates, even allegations involving erroneous medical conclusions or harmful downstream effects do not bring coroner-related conduct within any § 2744.02(B) exception. *Wallin*, 733 F. Supp. at 1155-56. Last, because no exception applies, the analysis ends at step two. *Cundiff,* 2025 LEXIS 258886, at \*35. Accordingly, no statutory exception to immunity applies and Mr. Butts' only state-law claim against Franklin County must be dismissed.

## V.     Conclusion

For the foregoing reasons, Dr. Fardal and Franklin County respectfully request this Court to dismiss all claims against them with prejudice.

Respectfully submitted,

**SHAYLA D. FAVOR**
**PROSECUTING ATTORNEY**
**FRANKLIN COUNTY, OHIO**

/s Dexter W. Dorsey
Amy L. Hiers (0065028)
Dexter W. Dorsey (0097657)
Brian D. Zagrocki (0101970)
Assistant Prosecuting Attorneys
373 South High Street, 13th Floor
Columbus, Ohio 43215
(614) 525-2192 (P)/ (614) 525- 6012(F)
ahiers@franklincountyohio.gov
ddorsey@franklincountyohio.gov
bzagrocki@franklincountyohio.gov
*Counsel for Defendants Dr. Patrick Fardal*
*and Franklin County.*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that the foregoing was filed on April 24, 2026 using the Court's e-filing system and that service will be made upon the parties by the Court's e-filing system.

/s Dexter W. Dorsey
Dexter W. Dorsey (0097657)
